UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY
SOUTHERN DIVISION at LONDON

CIVIL ACTION NO. 06-271-GWU

STEVE H. MITCHELL, JR.,                                          PLAINTIFF,

VS.                  **MEMORANDUM OPINION**

MICHAEL J. ASTRUE,
COMMISSIONER OF SOCIAL SECURITY,                    DEFENDANT.

## INTRODUCTION

The plaintiff brought this action to obtain judicial review of an administrative denial of his application for Disability Insurance Benefits (DIB). The appeal is currently before the Court on cross-motions for summary judgment.

## APPLICABLE LAW

The Sixth Circuit Court of Appeals has set out the steps applicable to judicial review of Social Security disability benefit cases:

1. Is the claimant currently engaged in substantial gainful activity? If yes, the claimant is not disabled. If no, proceed to Step 2. See 20 C.F.R. 404.1520(b), 416.920(b).

2. Does the claimant have any medically determinable physical or mental impairment(s)? If yes, proceed to Step 3. If no, the claimant is not disabled. See 20 C.F.R. 404.1508, 416.908.

3. Does the claimant have any severe impairment(s)--i.e., any impairment(s) significantly limiting the claimant's physical or mental ability to do basic work activities? If yes, proceed to Step 4. If no, the claimant is not disabled. See 20 C.F.R. 404.1520(c), 404.1521, 416.920(c), 461.921.

1

Mitchell

4. Can the claimant's severe impairment(s) be expected to result in death or last for a continuous period of at least 12 months? If yes, proceed to Step 5. If no, the claimant is not disabled. See 20 C.F.R. 404.920(d), 416.920(d).

5. Does the claimant have any impairment or combination of impairments meeting or equaling in severity an impairment listed in 20 C.F.R. Part 404, Subpart P, Appendix 1 (Listing of Impairments)? If yes, the claimant is disabled. If no, proceed to Step 6. See 20 C.F.R. 404.1520(d), 404.1526(a), 416.920(d), 416.926(a).

6. Can the claimant, despite his impairment(s), considering his residual functional capacity and the physical and mental demands of the work he has done in the past, still perform this kind of past relevant work? If yes, the claimant was not disabled. If no, proceed to Step 7. See 20 C.F.R. 404.1520(e), 416.920(e).

7. Can the claimant, despite his impairment(s), considering his residual functional capacity, age, education, and past work experience, do other work--i.e., any other substantial gainful activity which exists in the national economy? If yes, the claimant is not disabled. See 20 C.F.R. 404.1505(a), 404.1520(f)(1), 416.905(a), 416.920(f)(1).

Garner v. Heckler, 745 F.2d 383, 387 (6th Cir. 1984).

Applying this analysis, it must be remembered that the principles pertinent to the judicial review of administrative agency action apply. Review of the Commissioner's decision is limited in scope to determining whether the findings of fact made are supported by substantial evidence. Jones v. Secretary of Health and Human Services, 945 F.2d 1365, 1368-1369 (6th Cir. 1991). This "substantial evidence" is "such evidence as a reasonable mind shall accept as adequate to support a conclusion;" it is based on the record as a whole and must take into

Mitchell

account whatever in the record fairly detracts from its weight. Garner, 745 F.2d at 387.

One of the detracting factors in the administrative decision may be the fact that the Commissioner has improperly failed to accord greater weight to a treating physician than to a doctor to whom the plaintiff was sent for the purpose of gathering information against his disability claim. Bowie v. Secretary, 679 F.2d 654, 656 (6th Cir. 1982). This presumes, of course, that the treating physician's opinion is based on objective medical findings. Cf. Houston v. Secretary of Health and Human Services, 736 F.2d 365, 367 (6th Cir. 1984); King v. Heckler, 742 F.2d 968, 973 (6th Cir. 1984). Opinions of disability from a treating physician are binding on the trier of fact only if they are not contradicted by substantial evidence to the contrary. Hardaway v. Secretary, 823 F.2d 922 (6th Cir. 1987). These have long been well-settled principles within the Circuit. Jones, 945 F.2d at 1370.

Another point to keep in mind is the standard by which the Commissioner may assess allegations of pain. Consideration should be given to all the plaintiff's symptoms including pain, and the extent to which signs and findings confirm these symptoms. 20 C.F.R. Section 404.1529 (1991). However, in evaluating a claimant's allegations of disabling pain:

> First, we examine whether there is objective medical evidence of an underlying medical condition. If there is, we then examine: (1) whether objective medical evidence confirms the severity of the alleged pain arising from the condition; or (2) whether the objectively established medical condition is of such a severity that it can reasonably be expected to produce the alleged disabling pain.

3

---

Mitchell

Duncan v. Secretary of Health and Human Services, 801 F.2d 847, 853 (6th Cir. 1986).

Another issue concerns the effect of proof that an impairment may be remedied by treatment. The Sixth Circuit has held that such an impairment will not serve as a basis for the ultimate finding of disability. Harris v. Secretary of Health and Human Services, 756 F.2d 431, 436 n.2 (6th Cir. 1984). However, the same result does not follow if the record is devoid of any evidence that the plaintiff would have regained his residual capacity for work if he had followed his doctor's instructions to do something or if the instructions were merely recommendations. Id. Accord, Johnson v. Secretary of Health and Human Services, 794 F.2d 1106, 1113 (6th Cir. 1986).

In reviewing the record, the Court must work with the medical evidence before it, despite the plaintiff's claims that he was unable to afford extensive medical work-ups. Gooch v. Secretary of Health and Human Services, 833 F.2d 589, 592 (6th Cir. 1987). Further, a failure to seek treatment for a period of time may be a factor to be considered against the plaintiff, Hale v. Secretary of Health and Human Services, 816 F.2d 1078, 1082 (6th Cir. 1987), unless a claimant simply has no way to afford or obtain treatment to remedy his condition, McKnight v. Sullivan, 927 F.2d 241, 242 (6th Cir. 1990).

Additional information concerning the specific steps in the test is in order.

Mitchell

Step six refers to the ability to return to one's past relevant category of work. Studaway v. Secretary, 815 F.2d 1074, 1076 (6th Cir. 1987). The plaintiff is said to make out a prima facie case by proving that he or she is unable to return to work. Cf. Lashley v. Secretary of Health and Human Services, 708 F.2d 1048, 1053 (6th Cir. 1983). However, both 20 C.F.R. 416.965(a) and 20 C.F.R. 404.1563 provide that an individual with only off-and-on work experience is considered to have had no work experience at all. Thus, jobs held for only a brief tenure may not form the basis of the Commissioner's decision that the plaintiff has not made out its case. Id. at 1053.

Once the case is made, however, if the Commissioner has failed to properly prove that there is work in the national economy which the plaintiff can perform, then an award of benefits may, under certain circumstances, be had. E.g., Faucher v. Secretary of Health and Human Services, 17 F.3d 171 (6th Cir. 1994). One of the ways for the Commissioner to perform this task is through the use of the medical vocational guidelines which appear at 20 C.F.R. Part 404, Subpart P, Appendix 2 and analyze factors such as residual functional capacity, age, education and work experience.

One of the residual functional capacity levels used in the guidelines, called "light" level work, involves lifting no more than twenty pounds at a time with frequent lifting or carrying of objects weighing up to ten pounds; a job is listed in this category if it encompasses a great deal of walking or standing, or when it involves sitting most

Mitchell

of the time with some pushing and pulling of arm or leg controls; by definition, a person capable of this level of activity must have the ability to do substantially all these activities. 20 C.F.R. 404.1567(b). "Sedentary work" is defined as having the capacity to lift no more than ten pounds at a time and occasionally lift or carry small articles and an occasional amount of walking and standing. 20 C.F.R. 404.1567(a), 416.967(a).

However, when a claimant suffers from an impairment "that significantly diminishes his capacity to work, but does not manifest itself as a limitation on strength, for example, where a claimant suffers from a mental illness . . . manipulative restrictions . . . or heightened sensitivity to environmental contaminants . . . rote application of the grid [guidelines] is inappropriate . . ." Abbott v. Sullivan, 905 F.2d 918, 926 (6th Cir. 1990). If this non-exertional impairment is significant, the Commissioner may still use the rules as a framework for decision-making, 20 C.F.R. Part 404, Subpart P, Appendix 2, Rule 200.00(e); however, merely using the term "framework" in the text of the decision is insufficient, if a fair reading of the record reveals that the agency relied entirely on the grid. Ibid. In such cases, the agency may be required to consult a vocational specialist. Damron v. Secretary, 778 F.2d 279, 282 (6th Cir. 1985). Even then, substantial evidence to support the Commissioner's decision may be produced through reliance on this expert testimony only if the hypothetical question given to the expert accurately portrays the plaintiff's

physical and mental impairments. Varley v. Secretary of Health and Human Services, 820 F.2d 777 (6th Cir. 1987).

## DISCUSSION

The plaintiff, Steve H. Mitchell, Jr., was found by an Administrative Law Judge (ALJ) to have "severe" impairments consisting of a "very mild" disc herniation at L5-S1, anxiety, and depression. (Tr. 317). Nevertheless, based in part on the testimony of a vocational expert (VE), the ALJ determined that Mr. Mitchell retained the residual functional capacity to perform a significant number of jobs existing in the economy and, therefore, was not entitled to benefits. (Tr. 320-23). The Appeals Council declined to review, and this action followed.

At the most recent of two administrative hearings, the ALJ had asked the VE whether a person of the plaintiff's age, education, and work experience could perform any jobs if he were capable of "light" level exertion, and could not stand for more than three hours in a day, and also had the following non-exertional restrictions. He: (1) could not climb ladders, ropes, or scaffolds; (2) could occasionally climb stairs, kneel, crouch, crawl or bend; (3) would have a "fair" (defined as "limited but satisfactory") ability to demonstrate reliability, understand, remember, and carry out detailed or complex job instructions, maintain attention and concentration, deal with work stresses, interact with supervisors, deal with the public, and relate to co-workers; and (4) would have a "good" (defined as "more than satisfactory") ability in all other areas of occupational, performance, and

personal/social adjustment. (Tr. 465-6). The VE responded that there were jobs that such a person could perform, and proceeded to give the numbers in which they existed in the regional and national economies. (Tr. 466-7).

On appeal, this Court must determine whether the hypothetical factors selected by the ALJ are supported by substantial evidence, and that they fairly depicted the plaintiff's condition.

Mr. Mitchell alleged disability beginning January 5, 1998 due to lower back and hip pain, knee problems, foot injuries, migraine headaches, sinusitis, depression, and panic attacks. (Tr. 64, 431, 440-1, 448).

Although Mr. Mitchell alleged that his treating physician, Dr. Marisa Vito Cruz, had told him not to be lifting "anything" (Tr. 436), office notes from this source show that Dr. Vito Cruz had imposed limitations in September, 2001 of lifting no more than 40 pounds, no standing more than four hours at a time, and bending, stooping, and crawling limited to "not more than a few hours at a time" (Tr. 399). The physician stated that there were no limitations on sitting, walking, or climbing. (Id.).

Dr. Robert Strang, an examining orthopedic specialist, conducted a physical examination, reviewed an MRI showing only bulging disks at two levels with "no evidence of any herniated disc of any significance," and diagnosed a chronic back sprain. (Tr. 255). Dr. Strang opined that Mr. Mitchell "should be able to do light to moderate work, not heavy work," and suggested that "he be trained in a light job capacity." (Id.).

A consultative physical examiner, Dr. Patrick Donovan, found some limitations of range of motion in the back and right knee, and reviewed x-rays. He diagnosed lower back pain without evidence of radiculopathy, right knee pain, and a history of migraine headaches, and did not list any functional restrictions, although he mentioned that the plaintiff had "subjective pain." (Tr. 189-92).

A state agency physician, Dr. JoAnn Sexton, reviewed the record in September, 2000, and concluded that Mr. Mitchell could perform "medium" level exertion with most postural activities limited to an occasional basis. (Tr. 232-8).

The hypothetical physical restrictions were greater than found by Mr. Mitchell's treating physician, and no other source listed greater restrictions. Therefore, this portion of the decision is supported by substantial evidence.

Turning to Mr. Mitchell's psychological allegations, treatment notes from the Comprehensive Care Center (CCC) show that he was diagnosed by the staff psychiatrist with a mood disorder due to chronic pain, and given a Global Assessment of Functioning (GAF) score of 60. (Tr. 156, 259, 377, 372, 415). A GAF score of 60 is at the upper range of "moderate symptoms." <u>Diagnostic and Statistical Manual of Mental Disorders</u> (4th Edition-Text Revision), p. 34. The staff psychiatrist described Mr. Mitchell as "unmotivated" to seek employment, and commented on more than one occasion that vocational rehabilitation was "not contraindicated" from a psychiatric perspective. (Tr. 149, 372-4, 379-80).

Mitchell

While there is conflicting evidence regarding specific functional restrictions from one-time examiners Reba Moore, a psychologist, and Kevin Eggerman, a psychiatrist, the ALJ obtained testimony at the most recent administrative hearing from a medical adviser, Neil Lewis, also a psychologist.  Lewis gave several reasons for discounting the opinions of Reba Moore (Tr. 453-7), but since both Moore and Eggerman were one time examiners, the ALJ could reasonably have accepted Dr. Eggerman's opinion over that of Moore, in any case.  The ALJ followed Dr. Eggerman's specific restrictions.  (Tr. 382-3).  Accordingly, this portion of the hypothetical question is also supported by substantial evidence.

The decision will be affirmed.

This the 21st day of March, 2007.

Signed By:

*G. Wix Unthank*

United States Senior Judge